ADMITTED IN:
NEW YORK
CONNECTICUT

LAW OFFICES OF
**CAMERON STRACHER**
MEDIA AND ENTERTAINMENT LAW
51 ASTOR PLACE
NEW YORK, NY 10003
(646) 992-3850
CAM@STRACHERLAW.COM

WWW.STRACHERLAW.COM

November 12, 2024

**By ECF**

Catherine O'Hagan Wolfe
Clerk of the Court
United States Court of Appeals for the Second Circuit
Thurgood Marshall United States Courthouse
40 Foley Square
New York, NY 10007

Re:  ***Olivet University v. Newsweek LLC et. al (24-1473)***

Dear Ms. O'Hagan Wolfe:

Pursuant to this Court's Order entered on November 4, 2024, Defendants-Appellees Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek Publishing LLC, NW Digital LLC, NW Magazine LLC, NW Media Holdings Corp., and Naveed Jamali (collectively, "Newsweek"), hereby submit this letter brief to address whether there is federal subject matter jurisdiction over this case on the basis of diversity jurisdiction.  Newsweek maintains that this Court has subject matter jurisdiction over this case because there is complete diversity of citizenship between the parties, and there is a reasonable probability that Plaintiff-Appellant Olivet University ("Olivet") is seeking more than $75,000 in damages.

First, there is complete diversity between the parties because Olivet is a citizen of California and all Defendants-Appellees, including Newsweek Digital LLC, are citizens of New York.  A-12 ¶ 17.  Although the Amended Complaint failed to plead that Newsweek Digital LLC is a citizen of New York, Newsweek confirmed in its Rule 7.1 Corporate Disclosure that Newsweek Digital LLC is organized under the laws of the State of New York, and its sole member is NW Media Holdings Corp., a New York corporation with its principal place of business in New York.  *See* Rule 7.1 Statement (District Court ECF 23), attached hereto as Exhibit 1; *Carter v. HealthPort Techs., LLC*, 822 F.3d 47, 60 (2d Cir. 2016) ("[T]he citizenship of a limited liability company is determined by the citizenship of each of its members.").  Thus, Newsweek Digital LLC is a citizen of New York for purposes of diversity jurisdiction.

Second, although Newsweek does not concede that Olivet is entitled to any damages in this matter, the amount in controversy is satisfied because there is a reasonably probability that Olivet's claim for damages exceeds the jurisdictional amount.  *See MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F.Supp.2d 380, 390 (S.D.N.Y., 2009) (amount in controversy is satisfied where "it appears to a reasonable probability that the claim is in excess of the statutory jurisdictional amount") (citation omitted).  "Where no amount is specified, this fact alone does not bar a finding that the jurisdictional amount has been met."  *Id.* (citation

omitted). Rather, a court may consider "evidence outside of a plaintiff's pleadings to establish the amount in controversy if the pleading is facially inconclusive." *Id.* (citing *Burr ex rel. Burr v. Toyota Motor Credit Co.*, 478 F.Supp.2d 432, 438 (S.D.N.Y. 2006)). Here, Olivet alleges that Newsweek's reporting has caused "serious and ongoing damage to Olivet's reputation" and that Olivet has suffered "reputational, financial, and professional harm." A10 ¶ 6, A18 ¶ 51. Moreover, Olivet has sued a Newsweek reporter, Alex Rouhandeh, in the United States District Court for the Middle District of Florida for defamation arising from the same article at issue in this case, and is claiming damages of $10,000,000, including punitive damages, and has indicated it seeks similar damages here. App. Br. 21, 33–34; *see also* Am. Compl., *Olivet v. Rouhandeh*, Case No. 8:24-cv-00771, Dkt No. 28, ¶¶ 60, 68 (M.D. Fla. Jun. 19, 2024), attached hereto as Exhibit 2. Thus, Olivet's claim for damages exceeds the $75,000 minimum, and the case should not be dismissed for lack of jurisdiction. *See, e.g. Zido v. Werner Enters., Inc.,* 498 F.Supp.2d 512, 513–514 (N.D.N.Y. 2006) (finding that "[a]lthough [p]laintiffs do not specify a precise dollar amount sought" a fair reading of the complaint showed that plaintiffs' claims for damages exceeded $75,000 when plaintiffs claimed, *inter alia,* serious injuries, medical expenses and loss of consortium); *James v. Gardner*, 2004 WL 2624004, at *4 (E.D.N.Y. 2004)

(finding reasonable probability that damages exceeded $75,000 when complaint alleged "severe and permanent personal injuries").

Finally, Newsweek does not oppose an amendment by Olivet to its jurisdictional allegations under 28 U.S.C. § 1653 in order to clarify the citizenship of Newsweek Digital LLC and the amount of damages sought. *Herrick Co., Inc. v. SCS Communications, Inc.*, 251 F.3d 315, 329 (2d Cir.2001) ("where the facts necessary to the establishment of diversity jurisdiction are subsequently determined to have obtained all along, a federal court may . . . allow a complaint to be amended to assert those necessary facts").

Respectfully,

Cameron Stracher

*Counsel for Defendants-Appellees*

**EXHIBIT 1**

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------- x
                                      :

OLIVET UNIVERSITY,                  :

                                       :

                Plaintiff,     :   Case No. 1:23-cv-05670 (NRB)

v.                                  :

                                       :   **CORPORATE DISCLOSURE**

NEWSWEEK DIGITAL LLC, NEWSWEEK  :   **STATEMENT**

LLC, NEWSWEEK MAGAZINE LLC ,    :

NEWSWEEK PUBLISHING LLC, NW    :

DIGITAL LLC, NW MAGAZINE LLC, NW  :

MEDIA HOLDINGS CORP., and NAVEED :

JAMALI                          :

                                       :

              Defendants.    :
------------------------------------------------------------- x

Pursuant to Federal Rule of Civil Procedure 7.1, the undersigned counsel for Defendants

Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek Publishing

LLC, NW Digital LLC, NW Magazine, LLC, and NW Media Holdings Corp., certifies as

follows:

Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek

Publishing LLC, NW Digital LLC, and NW Magazine LLC are privately held companies with no

publicly-traded parent.  Each is organized under the laws of the state of New York, and the sole

member of each is NW Media Holdings Corp., a New York corporation with its principal place

of business in New York.

Dated:  September 11, 2023          Respectfully submitted,
       New York, NY

                                       */s/ Cameron Stracher*
                                       Cameron Stracher
                                       Law Offices of Cameron Stracher
                                       51 Astor Place, 9th Floor
                                       New York, NY 10003
                                       Tel:   (646) 992-3850; Fax:  (646) 992-4241
                                       Email: cam@stracherlaw.com

1

## CERTIFICATE OF SERVICE

I hereby certify that on September 11, 2023, a true and correct copy of the foregoing

**CORPORATE DISCLOSURE** was filed with the Court through the ECF-CM electronic filing

system, which will automatically serve electronic notice of the same on all counsel of record

_/s/ Cameron Stracher_
Cameron Stracher

**EXHIBIT 2**

UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

----------------------------------------------- X
OLIVET UNIVERSITY,                              :
                                                :
                    Plaintiff,                  :
                                                :      **AMENDED COMPLAINT**
        -against-                               :      **WITH JURY DEMAND**
                                                :
ALEX ROUHANDEH                                  :      **CASE NO. 8:24-CV-00771**
                                                :
                    Defendant.                  :
----------------------------------------------- X

Olivet University ("Olivet"), by its undersigned counsel, brings this Complaint against Alex Rouhandeh ("Rouhandeh") for committing defamation and tortious interference against Olivet.

## NATURE OF THE ACTION

1. Rouhandeh is the author of 15 Newsweek articles systematically attacking Olivet. His barrage began shortly after the Newsweek Publisher vowed in text messages to attack Olivet with a "nuclear bomb." [1]

---

[1] Olivet has also brought defamation claims against Newsweek Digital LLC, Newsweek LLC, Newsweek Magazine LLC, Newsweek Publishing LLC, NW Digital LLC, NW Magazine LLC, NW Media Holdings Corp. (collectively, "Newsweek"), and Newsweek correspondent Naveed Jamali. *See* Amended Complaint, Case No. 1:23-cv-05670-NRB (S.D.N.Y. filed September 18, 2023), Dkt. 26 (the "New York Action") and Notice of Civil Appeal, Case No. 24-1473 (2nd Cir. filed May 28, 2024), Dkt. 1 (the "Appeal"). Rouhandeh was voluntarily dismissed from the New York Action, based on his assertion of the court's lack of personal jurisdiction in New York and his assertion that he resides in Florida. *See* Notice of Voluntary Dismissal Without Prejudice, Case No. 1:23-cv-05670-NRB (S.D.N.Y. Jan. 19, 2024), Dkt. 47; *see also id.* Dkt. 48 (granting dismissal of Rouhandeh without prejudice). In a Motion to Dismiss filed May 28, 2024, defendant Rouhandeh asserted the court should dismiss the original complaint due to res judicata concerns.

2.  Rouhandeh conspired to attack Olivet with a covert inner circle inside of Newsweek that includes the Newsweek Publisher, Dev Pragad ("Pragad"); Chief Content and Strategy Officer Dayan Candappa; Global Editor in Chief Nancy Cooper; and Contributing Editor-at-Large Naveed Jamali.

3.  Rouhandeh and his covert team have altogether authored, edited, and published 17 articles in since the Newsweek Publisher's threat of attacking Olivet with a "nuclear bomb."

4.  Rouhandeh's systematic attack began in 2022 and has continued unabated—his most recent article attacking Olivet was published only a few days ago on May 28, 2024.

5.  Rouhandeh was a general assignment reporter for Newsweek at the time he began covering Olivet. He penned several attack pieces against Olivet and was then promoted to the position Congressional Correspondent. This promotion came after Pragad specifically sent text messages to Olivet members threatening to "nuke everyone" by "[triggering] a congressional investigation [into] Olivet."[2]  Since then, at least two congresspeople have given quotes to

---

These concerns are unwarranted because res judicata dismissal requires the same claim to be made against the same defendant. Needless to say, Alex Rouhandeh and Naveed Jamali are two individual, natural persons and are therefore not the same defendant. The claims also differ because the New York Action and Appeal includes a defamation claim over an article that is not covered by the present action here because it is solely authored by Naveed Jamali. Furthermore, this amended complaint includes new defamatory statements that were not brought forth in the New York Action and Appeal.

[2] https://www.techtimes.com/articles/277527/20220703/newsweek-ceo-dev-pragad-faces-lawsuit-for-fraud-and-betrayal.htm

Newsweek, which Newsweek construed negatively against Olivet (despite the congresspeople claiming they were neutral statements) in articles authored by Rouhandeh.

6. Rouhandeh co-authored many of his attack pieces with Newsweek editor Naveed Jamali. While Rouhandeh was promoted after authoring hit pieces against Olivet, his co-author, Jamali, conversely stated on social media that he feared he would lose his job if he did not attack Olivet. Jamali reports to Newsweek's Global Editor Nancy Cooper, who in turn reports to Chief Content and Strategy Officer Dayan Candappa, who sits on the executive team of Newsweek along with Newsweek Publisher, Pragad. Pragad personally solicited ex-Olivet students on social media for information related to their experiences at Olivet to help further the covert inner circle's objectives, despite editor Cooper's claim that the Newsweek newsroom is "independent" from influences outside the newsroom.

7. Pragad is a former Olivet member. In or around April 2022, Pragad publicly announced his disassociation with Olivet. At the time, Olivet members privately held ownership interests in Newsweek, where Pragad sat as CEO. Pragad was dissatisfied with Olivet after it refused to pressure its members to hand Newswek ownership over to Pragad for free. As Publisher, Pragad threatened via text messages to "go to [the] media about Olivet" to attack it with claims of "human trafficking" if Olivet did not reach a "special

arrangement" by forcing its members to give Pragad full control of Newsweek. These text messages were sent only days before Rouhandeh and others began Newsweek's systematic attack against Olivet, publishing now 17 articles.

8. Rouhandeh has followed through on Pragad's various threats, authoring numerous false and defamatory statements regarding Olivet for publication. Among other articles, on March 28, 2023, Newsweek published an article, co-authored Rouhandeh stating that "***Olivet University has previously pleaded guilty to money laundering*** in New York."[5]

9. Rouhandeh knew that the statement in the March 2023 article he co-authored was false.  The public records on which the articles were purportedly based plainly showed that Olivet did not plead guilty to money laundering.  Olivet pled to, in relevant part, "conspiracy in the fifth degree," a misdemeanor. Pleading guilty to a "conspiracy" misdemeanor is a very different thing, and is recognized by the typical reader as a very different thing, than pleading guilty to money laundering, which is typically a felony.  Indeed, before the March

---

[5] Naveed Jamali and Alex J. Rouhandeh, *California Moves to Shut Down David Jang's Olivet University as Feds Circle*, Newsweek (Mar. 28, 2023, 12:27 PM), https://web.archive.org/web/20230328163859/https://www.newsweek.com/california-moves-shut-down-david-jangs-olivet-university-feds-circle-1790647.  Attached hereto as Exhibit A.

- 4 -

2023 article was published, Olivet informed Newsweek in writing that Rouhandeh had authored other articles that falsely reported Olivet's plea.[6]

10. Rouhandeh's deliberate false reporting of Olivet's plea had its intended effect, causing serious and ongoing damage to Olivet's reputation.  Olivet brings this lawsuit to seek redress for its injuries and to stop Rouhandeh from further damaging its reputation.

## PARTIES

11. Plaintiff Olivet is a religious nonprofit corporation organized and existing under the laws of the State of California with its principal place of business in Anza, California.   Olivet is a private, evangelical Christian institution consisting of multiple colleges, including the Olivet Theological College & Seminary, the Olivet College of Journalism, and the Olivet Institute of Technology.   Olivet Theological College & Seminary was founded in 2000 by evangelical, Korean American pastor Dr. David Jang.  The seminary expanded into a full university in 2004, and thus Olivet University was born.  Olivet's main campus is located in southern California.  It also has extension campuses across the United States, including in Florida, Missouri, Tennessee, and Washington, D.C.

---

[6] Letter from Jeffrey M. Rosenfeld to Newsweek LLC, Request to Retract Defamatory Publication Pursuant to California Civil Code §48a, dated July 12, 2022.   Attached hereto as Exhibit B.

12. Defendant Rouhandeh, an individual, is a congressional correspondent for Newsweek. Rouhandeh is a resident of Sarasota County and is domiciled in the Middle District of Florida. Rouhandeh is the author and co-author of numerous defamatory articles that Newsweek published.

## JURISDICTION AND VENUE

13. This Court has subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because the parties are citizens of different states and the amount in controversy exceeds $75,000.00, exclusive of interest and costs.

14. There is complete diversity among the parties because Olivet is a corporation organized under the laws of the State of California with its principal place of business in Anza, California, and Rouhandeh is a citizen and/or domiciliary of Florida.

15. The amount in controversy exceeds $75,000.00 (exclusive of interest and costs) because, as alleged herein, Rouhandeh's false and defamatory statements have caused Olivet reputational, financial, and professional harm.

16. This Court has supplemental jurisdiction under 28 U.S.C. § 1367 over the Florida state tortious business interference claim because the claim arises from a common nucleus of operative facts with the federal defamation claim.

17. This Court has general jurisdiction over Rouhandeh because he is a resident of Florida.

18. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) because Rouhandeh resides in this District.

## FACTUAL ALLEGATIONS

19. Beginning on June 27, 2022, Rouhandeh authored and co-authored a series of articles 15 articles full of numerous false and defamatory statements detailing supposed criminal activity, associations, and investigations centering on Olivet.  There are so many false and defamatory statements concerning Olivet throughout these articles that they are too numerous to count.  Many are detailed below.

20. On June 27, 2022, Rouhandeh co-authored a Newsweek article titled, "Chinese Pastor's Arrest Ordered as Feds Circle Olivet Christian Sect."  The headline falsely and defamatorily claimed that the "[f]eds [c]ircle Olivet."  The article associated Olivet with "laundering money for criminals in the United States and China."  The article stated there were "ongoing investigations into potential illegal activity by Jang's network of churches, businesses and education establishments, collectively known as Olivet."  Olivet has never laundered money for criminals in the United States and China.  Olivet was not being investigated at the time of the article, and any investigations alluded to were either concluded without Olivet being found guilty of money laundering or already had statutes of limitations that expired by the time of the writing of

the article.  These statements damaged the Olivet reputation and remain online to this day, causing continuous harm to Olivet.

21.    On July 3, 2022, Rouhandeh authored a Newsweek article titled, "IBT Media sues Newsweek CEO, demanding he return the magazine."  The article falsely states that companies owned by individuals associated with Olivet pleaded guilty to money laundering, recklessly and falsely associates Olivet with "laundering money for criminals," and recklessly and falsely links Olivet University to fentanyl manufacturing.

22.    Only July 8, 2022, Rouhandeh authored a Newsweek article titled, "Newsweek sues David Jang, leader of sect under federal investigation."  The article falsely associates Olivet with an ongoing criminal probe, of which Olivet has never been a target.  Again falsely associates Olivet with laundering money for criminals.  Falsely stated that Olivet University plead guilty to a felony, when in fact it's guilty plea resulted in a misdemeanor.  Falsely associates Olivet with "three senior law enforcement officials" stating that there is a link with Chinese organized crime and drug cartels to this story.

23.    On July 18, 2022, Rouhandeh co-authored a Newsweek article titled, "Olivet student's desperate 911 call led to federal trafficking probe."  The article states that Olivet has "failed to clean up its act" despite the Manhattan DA determining that Olivet has not committed any further violations.  The article includes false claims accusing Olivet of being under investigation for labor

trafficking, money laundering, and visa fraud.  Olivet has never been the target of any labor trafficking investigation; any investigation of Olivet into money laundering had already been closed without Olivet being held liable for money laundering or with the statute of limitations already expiring by the time of the publishing of the article; and any visa fraud statute of limitations had already passed by the time of the writing of the article.  The article falsely claims that Olivet "tortured" somebody, falsely states that the story is a matter of "national security," falsely ties Olivet to "drug trafficking," of which it has never been accused, and falsely alludes to a "federal investigation" of which Olivet has never been a target.

24.    Similarly, Rouhandeh authored and co-authored articles that falsely and defamatorily parroted the same claims, and other similar claims, again and again.  These articles include the following articles: "Evangelical Christian Group Suspends Olivet as Newsweek Lawsuits Pile Up"; "Olivet University Faces Accreditor Ultimatum as Probes, Violations Pile Up"; "Olivet Assembly chief Mark Spisak under scrutiny in money laundering probe"; "California Moves to Shut Down David Jang's Olivet University as Feds Circle"; "Newsweek Shareholders End Legal Dispute, Co-owner Davis Leaves Olivet Sect"; "World Evangelical Body Cuts Ties With David Jang's Embattled Olivet Sect"; "Settlement spares David Jang's Olivet Assembly from racketeering lawsuit"; "David Jang trafficked Olivet University students, lawsuit claims"; "Olivet

University gets reprieve from accreditor for one year"; "US Attorney on Olivet University case, charges may come 'soon,' court told"; and, "Olivet University must be fully investigated, congressman says."

25.     These articles repeatedly, falsely tie Olivet University to non-existent or non-applicable money laundering and criminal probes of which Olivet was never the target or the statute of limitations already expired.  They repeatedly, falsely tie Olivet to other unsubstantiated or unrelated criminal and civil activity such as racketeering and dealing in counterfeit goods.  They falsely state that Olivet is under review in multiple states.

26. In particular, Olivet has never plead guilty to money laundering in the United States, as was falsely indicated on March 28, 2023, when Newsweek published another article about Olivet co-written by Jamali and Rouhandeh (the "2023 Article").

27. The 2023 Article stated that "Olivet University has previously **pleaded guilty to money laundering** in New York."  (emphasis added).

28. The statement in the 2023 Article is false and defamatory, and Rouhandeh knew it.  As was clear from public records to which Rouhandeh had access, Olivet resolved an ongoing investigation by the New York County District Attorney into the financing of certain computer servers used by Olivet and Newsweek by entering into a plea agreement in February 2020.

- 10 -

29. Under the terms of the plea agreement, Olivet pled to falsification of business records in the first degree, a felony, N.Y. Penal Law § 175.10, and conspiracy in the fifth degree, a misdemeanor, N.Y. Penal Law § 105.05(1). The plea agreement provided that, if Olivet complied with the terms for 24 months, then all counts of the indictment other than the conspiracy charge would be dismissed, and the plea of guilty to falsification of business records would be reduced to the second degree, a misdemeanor, N.Y. Penal Law § 175.05. After the expiration of the agreed-upon 24-month period, all charges except for the conspiracy charge were in fact dismissed.

30. Olivet did not plead to an offense of money laundering. The plea is clear on its face that Olivet pled to "conspiracy in the fifth degree."

31. Rouhandeh knew or should have known that his statement was patently false because, at a minimum, the facts related to Olivet's plea were publicly available.

32. Rouhandeh also knew or should have known because Olivet informed Newsweek of this error in the 2022 Article and in other articles that Rouhandeh had authored. On July 12, 2022, Olivet sent Newsweek a cease-and-desist letter. In the cease-and-desist letter, Olivet identified Rouhandeh as the author of several articles that falsely stated or implied that Olivet had pled guilty to money laundering. The cease-and-desist letter unequivocally stated that

- 11 -

Rouhandeh's articles "contain false assertions of fact" because Olivet "did not plead guilty to money laundering."

33. In fact, Rouhandeh's co-author Jamali tweeted in April 2022 that Olivet confirmed the dismissal of all money laundering charges. But nearly a year later in March 2023, Rouhandeh stated that Olivet had pled guilty to money laundering.[11]

34. On April 14, 2023, Olivet sent yet another cease-and-desist letter to Newsweek, again highlighting Rouhandeh's error. On April 20, 2023, Newsweek issued a "correction" to the 2023 Article. The correction read: "*This story originally stated that Olivet pleaded guilty to money laundering; it pleaded guilty to falsifying business records in connection with a money-laundering scheme.* Newsweek *regrets the error.*"[12] This purported correction is buried at the bottom of the article and not conspicuous to an average reader.

---

[11] Naveed Jamali (@NaveedAJamali), Twitter (Apr. 22, 2022, 4:37 PM), https://twitter.com/NaveedAJamali/status/1517603519175475201 ("The money laundering charges & all felony charges have been dismissed & the case is fully resolved as a misdemeanor matter.").

[12] Naveed Jamali and Alex J. Rouhandeh, *California Moves to Shut Down David Jang's Olivet University as Feds Circle*, Newsweek (Apr. 20, 2023 at 4:24 PM), https://www.newsweek.com/california-moves-shut-down-david-jangs-olivet-university-feds-circle-1790647#:~:text=California's%20Attorney%20General%20has%20taken,fraud%20and%20other%20suspected%20crimes (the original publication date of this article was on Mar. 28. 2023, 12:27 PM).

35. On September 18, 2023, Olivet filed the New York Action against Rouhandeh, his co-author Naveed Jamali, and several Newsweek entities. Olivet filed that complaint in the United States District Court for the Southern District of New York. *See Olivet University v. Newsweek Digital LLC*, Case No. 1:23-cv-05670-NRB (S.D.N.Y. filed September 18, 2023). The New York Action, although dismissed, is pending in Appeal.

36. Shortly after Olivet initiated the New York Action, Newsweek issued a correction to the false statement in its 2022 Article.[13]

37. Newsweek's belated correction of Jamali's false statement does not remedy the ongoing harm to Olivet from Jamali's false and defamatory statement.

38. On January 30, 2024, pursuant to FLA. STAT. § 770.01, counsel for Olivet again served notice on counsel for Rouhandeh regarding the 2023 Article, informing counsel that Olivet planned to refile its suit based on the defamatory statement in the 2023 Article.

39. These articles were published under Rouhandeh's name with malice after Pragad repeatedly threatened Olivet members in his text messages. From January to March 2022, weeks before the attack campaign was launched by Newsweek against Olivet, Pragad stated the following: that he would launch a

---

[13] Naveed Jamali, *New York Shuts Down Olivet University Amid Federal Money-Laundering Probe*, Newsweek (August 8, 2023, 11:34 AM), https://www.newsweek.com/new-york-shuts-down-olivet-university-amid-federal-money-laundering-probe-1721221 (the original publication date of this article was on July 2, 2022, 9:35 PM).

"nuclear bomb" on Olivet; that he would "detonate a nuclear bomb and kill" Olivet; that he would "prepare a news team to write about Olivet"; that he would mow down Olivet like "puppies before a machine gun"; that he would trigger a "congressional investigation" into Olivet; and that he would go to the "media" about Olivet and report it was engaged in "human trafficking." These are but a sampling of his text messages, which have been revealed publicly in the media and in lawsuits.

40. The writing and publishing of articles was only the beginning of Rouhandeh's attack. He and his covert cohort proceeded to disseminate the articles to individuals and organizations closely associated with Olivet.

41. A defamatory articles authored by Rouhandeh was circulated to the New York State Education Department before its decision on whether to renew Olivet University's permission to operate. Newsweek then reported on the NYSED decision without disclosing their interference in it.

42. Defamatory articles were sent to the Bureau of Private Postsecondary Education in California, Olivet's primary state accreditor, along with Association of Biblical Higher Education, Olivet's national accreditor. Newsweek co-author Naveed Jamali filed a complaint with BPPE against Olivet. BPPE subsequently inquired into Olivet's accreditation, which Newsweek and Rouhandeh then reported on without disclosing their involvement in triggering the BPPE action in the first place.

43. Defamatory articles were sent to Olivet extension campus accreditors across the country, including Tennessee, Florida, Washington, D.C., and others. Newsweek subsequently falsely reported that Olivet was under "investigation" by accreditors in multiple states.

44. Newsweek sent defamatory articles to the World Evangelical Alliance General Secretary in order to influence him to distance the World Evangelical Alliance from Olivet University. WEA subsequently removed Olivet University from its membership categories.

45. Newsweek sent defamatory articles to the National Association of Evangelicals in order to influence it to distance the organization from Olivet University.

46. Rouhandeh defamed Olivet to townspeople near Olivet's main campus in the small town of Anza, California, by visiting several individuals and local business owners and asking them about unsubstantiated claims of human trafficking at Olivet.

47. Rouhandeh and Newsweek similarly defamed Olivet by sending defamatory articles to at least two congresspeople. Newsweek also funded a lobbyist firm to request congresspeople to send letters to the White House to launch a DOJ investigation into Olivet.

48. Newsweek similarly conspired with civil human trafficking plaintiffs to file a lawsuit against Olivet University for human trafficking, which was subsequently stayed by its own attorney.

49. Newsweek contacted DHS investigators to try and instigate an investigation into Olivet by providing them with false and defamatory information.

50. Olivet filed this lawsuit to obtain remedies for its ongoing injury from Rouhandeh's false and defamatory statement.

## COUNT I
### DEFAMATION *PER SE*

51. Olivet incorporates by reference paragraphs 1 through 50 and re-alleges them as if set forth fully herein.

52. Rouhandeh authored and co-authored 15 articles and the 2023 Article that were subsequently published on Newsweek's website and these articles repeatedly make false and defamatory statements that Olivet pled guilty to money laundering—it did not; that Olivet is currently under investigation for human or labor trafficking—it is not; that associate Olivet with drug trafficking—it has never been accused of this by any law enforcement agency; and that associate Olivet with numerous other untrue accusations that Olivet is under criminal or any other investigation, when in fact it is not.

53. Rouhandeh's statements identified—and were "of or concerning"—Olivet, repeatedly referring to Olivet explicitly by name or implicitly by association with various other entities and individuals.

54. Rouhandeh's statement contains falsehoods about Olivet, whether on their face and/or by virtue of clear implication that Defendant affirmatively intended.

55. Rouhandeh's false statements regarding Olivet was defamatory per se because they falsely associate Olivet directly and indirectly with criminal activity.

56. Rouhandeh's false and defamatory statement were published throughout the State of Florida and around the world on the Internet, and were widely circulated by Newsweek to disseminate the statements to its broad audience, including on its homepage as the global top news story; by email blast to its subscribers; and throughout its website sections and pages.

57. Rouhandeh made the false and defamatory statement knowing that it was false or with reckless disregard for its truth or falsity because of publicly available information that a reasonable reporter would be expected to find.

58. Rouhandeh made his false statement with ill will and spite, and with wanton, reckless, or willful disregard for its injurious effect on Olivet and Olivet's rights after the Newsweek Publisher declared he would drop on Olivet a "nuclear bomb."

59. Rouhandeh's false and defamatory statement caused Olivet to suffer reputational, financial, and professional harm.

60. To quantify the harm that Olivet suffered and continues to suffer from Newsweek's ongoing attack campaign, it is helpful to look at the influence of a single ad campaign on Newsweek. Newsweek advertising packages involving over a dozen sponsored content articles command advertising rates of over $1,000,000. Olivet has been damaged by Newsweek's influence in an amount far greater than an advertising campaign would cost because not only has Newsweek published 15 articles by Rouhandeh in its campaign against Olivet, but it repeatedly boosted its Olivet articles to its top global news positions via website and email blast. Therefore, Olivet seeks damages in an amount no less than $1,000,000.

61. Olivet demands trial by jury.

**COUNT II**
**TORTIOUS INTERFERENCE**

62.   Olivet incorporates by reference paragraphs 1 through 50 and re-alleges them as if set forth fully herein.

63.   Olivet maintained various key business relationships integral to its survival such as with university state and federal accreditors and professional, evangelical Christian associations.

64.   Rouhandeh had knowledge of Olivet's business relationships with accreditors, professional associations, congresspeople in its district, and others

- 18 -

because this was publicly available information and information privy to Newsweek Publisher, Pragad.

65.     Rouhandeh intentionally interfered with Olivet's business relationships by sending defamatory articles to its business partners to discourage the relationships and in attempts to instigate investigations against Olivet.

66.     Olivet has been damaged through by Rouhandeh's activity due to the loss of campus operations, loss of professional relationships, and reputational harm that ensued.

67.     Rouhandeh engaged in this behavior maliciously because he knew of Pragad's threats, conspired with Newsweek's covert team intent on attacking Olivet, and recklessly engaged with false reporting on Olivet.

68.     Olivet seeks punitive damages commensurate with the defamation damages in count I and in an amount that would discourage Newsweek from engaging in such behavior in the future.  Olivet seeks punitive damages in an amount no less than $9,000,000.


## PRAYER FOR RELIEF

WHEREFORE, Olivet prays this Court enter orders as follows:

1.      Finding that Rouhandeh is liable for defaming Olivet.

2.      Awarding permanent injunctive relief that Rouhandeh shall refrain from repeating or in any way furthering the publication of the defamatory statement.

3.      Awarding Olivet damages in an amount to be determined at trial in an amount no less than $10,000,000.

4.      Awarding Olivet pre- and post-judgment interest, costs, and such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Olivet hereby demands a trial by jury on all issues so triable pursuant to Rule 38 of the Federal Rules of Civil Procedure.

Dated: June 18, 2024                             Respectfully submitted,


By: */s/ Yen-Yi Anderson*
_____
Yen-Yi Anderson
New York Bar No. 5096268
Anderson and Associates
61 Broadway, Suite 2809
New York, NY 10006
Tel: 646 201 9117
Email: y.anderson@aalawpc.com

Attorneys for Plaintiff
Olivet University